Marvin D. **CUTRIGHT**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 172–88C.

United States Claims Court.

Oct. 3, 1990.

P. Christian Hague, Pittsburgh, Pa., atty. of record, for plaintiff. Frank G. Salpietro, Brian G. Brunsvold, Meyer, Unkovic & Scott and Finnegan, Henderson, Farabow, Garret & Dunner, of counsel.

Agnes M. Brown, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff is seeking retribution of annual and sick leave benefits, which allegedly accrued during his tenure as a court reporter, pursuant to the Annual and Sick Leave Act, 5 U.S.C. § 6301 et seq. (1982). Defendant denies owing any sums to plaintiff and contends that plaintiff was not entitled to leave benefits prior to 1984.

### Factual Background

Plaintiff, Marvin Cutright, was continuously employed as a court reporter for the United States district courts from September 1958 to October 1986. During this period, plaintiff worked at least 8 hours a day, 5 days a week.[1] Although plaintiff was not guaranteed a certain number of hours of work each week, he received a

---

1. Affidavit of Marvin D. Cutright in support of his motion for summary judgment, p. 1.

fixed weekly salary irrespective of the number of hours actually worked. Plaintiff's salary was based on a 40–hour workweek. In addition, plaintiff did not augment his salary by earnings from the sale of transcripts to private parties.[2] As a court reporter, plaintiff enjoyed annual and sick leave at the discretion of the court.

Upon retirement, plaintiff requested leave benefits from the Administrative Office of the United States Courts (AO).[3] Plaintiff alleged entitlement to these benefits under the Annual and Sick Leave Act, 5 U.S.C. § 6301 (1982) (Leave Act).[4] The AO informed him that until 1984, all court reporters were considered intermittent federal employees not covered by the Leave Act. The AO explained that, beginning January 1, 1984, those court reporters placed on regular tours of duty (i.e. fixed hours specified in advance) earned annual and sick leave pursuant to policy set forth by the Judicial Conference of the United States[5] (Judicial Conference). In accordance with this policy, the clerks of the court were instructed to maintain leave records for court reporters with regular tours of duty. Prior to this date, defendant maintained no leave records for plaintiff. The AO determined that plaintiff was only entitled to annual and sick leave benefits after January 9, 1984, when he was assigned ·a regular tour of duty by the clerk of the court.

Plaintiff filed an action in this court on March 15, 1988, seeking recovery of benefits allegedly denied him under the Leave Act.[6] Plaintiff claims his accrued and accumulated benefits total 1,480 hours annual leave and 2,913 hours sick leave.[7] In addition, plaintiff moved for certification of the case as a class action. The motion was denied by Order of the court filed October 11, 1988. *Marvin D. Cutright v. United States*, 15 Cl.Ct. 576 (1988).

Plaintiff filed a motion for summary judgment on July 31, 1989. Defendant filed a cross-motion for summary judgment on September 27, 1989. Following the submission of all required pleadings, oral argument on the parties' cross-motions for summary judgment was heard by this court on August 27, 1990.

### Jurisdiction

Plaintiff seeks compensation from the United States for accrued annual and sick leave benefits, pursuant to the Annual and Sick Leave Act, 5 U.S.C. § 6301 (1982). Jurisdiction is, therefore, proper under 28 U.S.C. § 1491 (1982).

### Summary Judgment

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled

2. Defendant notes that court reporters often receive compensation from private sources for the production of official transcripts. However, the record is void of any evidence that plaintiff ever performed such outside work.

3. The Administrative Office (AO) has the responsibility to "supervise all administrative matters relating to the offices of the clerks and other clerical and administrative personnel of the courts." 28 U.S.C. § 604(a)(1) (1988).

4. Federal employees covered by the Leave Act earn a specific number of annual and sick leave commensurate with their tenure. A full-time employee is entitled to annual leave at an accrual rate of: (a) One-half day for each bi-weekly pay period for an employee with less than 3 years of service; (b) Three-fourths day for each full bi-weekly period for an employee with 3 but less than 15 years of service; (c) One day for each full bi-weekly pay period for an employee with more than 15 years of service. 5 U.S.C.

§ 6303 (1982). A federal employee accumulates sick leave at a rate of one-half day for each full bi-weekly period. 5 U.S.C. § 6307 (1982). Upon departure from government service, such employees are entitled to a lump sum payment for accumulated annual leave. Sick leave is credited toward civil service retirement annuity, but is not calculated into a lump sum payment.

5. Under 28 U.S.C. § 753 (1988), court reporters are appointed and employed by the district courts subject to the supervision of the Judicial Conference.

6. Complaint ¶ 2.

7. While the court will determine whether Mr. Cutright is entitled to Leave Act benefits for service prior to 1984, any calculation of annual and sick leave due plaintiff under the Act remains a matter for resolution between the parties.

to judgment. RUSCC 56; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must determine, as a matter of law, whether plaintiff is entitled to annual and sick leave coverage for his entire term as a court reporter. Thus, the court is presented with the question of proper interpretation of a statute. The court may rule on that interpretation as a pure issue of law. *McKart v. United States,* 395 U.S. 185, 198, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969).

### Discussion

#### A. *Issue Presented*

The threshold issue to be decided by the court is whether plaintiff was covered by the Leave Act prior to 1984. If the Leave Act is applicable to plaintiff, then the court must determine whether plaintiff may recover annual and sick leave for his entire term of appointment as a court reporter.

Plaintiff states that throughout his term as a court reporter, he was a full-time employee within the meaning of the Leave Act. Defendant avers that plaintiff's lack of a regularly established tour of duty precluded his coverage under the Leave Act until 1984, when the court assigned him to a fixed work schedule.[8] Defendant argues that only a full-time employee with a regular tour of duty falls within the ambit of the Leave Act.[9] Defendant alternatively contends that, even if plaintiff was entitled to Leave Act benefits before 1984, he has forfeited all but 240 hours of his annual leave.

#### B. *Coverage Under the Annual and Sick Leave Act*

The Annual and Sick Leave Act provides a comprehensive system of regulation and administration of leave accrual, accumulation, and payment for the federal government. With certain exceptions, the Leave Act applies to all federal "employees" as that term is defined in 5 U.S.C. § 2105 (1982). Under that definition, an employee refers to the "vast majority of civilian employees", including any individual appointed in civil service by the President, an officer (i.e. a judge), or another employee, who performs a federal function and is supervised by a federal officer or employee in the performance of his or her duties. 5 U.S.C. § 2105 (1982); *Horner v. Acosta,* 803 F.2d 687 (Fed.Cir.1986); *Costner v. United States,* 229 Ct.Cl. 87, 665 F.2d 1016 (1981). Both parties agree that plaintiff falls within the definition of "em-

---

**8.** The AO credited plaintiff with the amounts of annual and sick leave reflected in the leave records maintained by the clerk of the district court where plaintiff was employed as a court reporter. Thus, plaintiff received benefits based on service after January 9, 1984.

**9.** Defendant argues that "in order to be entitled to accrue[d] leave under the Leave Act, an employee must be a full-time employee with an established regular course of duty during the administrative workweek." Defendant's Cross Motion for Summary Judgment, p. 8. Defendant also stated at oral argument: "section 6301(2) [of the Leave Act] is the section that we believe that specifically excludes Mr. Cutright. That section excludes part-time employees who do not have a regular tour of duty. So in order to be entitled to benefits under the Leave Act, an employee has to be a full-time employee, with an established course of duty during the administrative workweek." Transcript (tr.) p. 33.

ployee" under § 2105.[10] Section 6301 of the Act sets forth specific categories of employees excluded by the Leave Act. The Leave Act reflects a congressional intention that these exceptions to leave system coverage be narrowly construed.[11] All civilian "employees" who do not fall within any of these enumerated exceptions are entitled to Leave Act benefits. *Sauer v. United States,* 173 Ct.Cl. 642, 649, 354 F.2d 302, 305 (1965). Congress did not explicitly exclude official court reporters from the purview of the Act. The only exclusion in the Leave Act possibly applicable to plaintiff is for a "part-time employee who does not have an established regular tour of duty during the administrative workweek." [12] 5 U.S.C. § 6301(2)(B)(ii) ("irregular tour of duty" exception).

■ Contrary to defendant's contention, the plain language of the Leave Act dictates that the "irregular tour of duty" exception only applies to part-time employees. To read § 6301(2)(B)(ii) of the Act, which excludes "part-time employees with a regular tour of duty during the administrative workweek", as limiting Leave Act coverage to full-time employees with a regular course of duty would torture the clear and unequivocal meaning of that section and frustrate the Act's legislative presumption in favor of employee coverage. If Congress had intended to restrict annual and sick leave benefits to employees with work schedules fixed in advance, it would have so stated. Moreover, the following passage from the House and Senate Reports indicates that Congress had a contrary intention in adding § 6301(2)(B)(ii) to the Leave Act:

> The bill [now § 6301(2)(B)(ii)] would extend the benefits of the Annual and Sick Leave Act on a pro rata basis to all part-time Federal employees for whom there has been established a regular tour of duty covering not less than five days in any administrative workweek.

H.Rep. No. 655, S.Rep. No. 971; U.S.Code Cong.Serv., pp. 1972, 1974 (Vol. 2, 1949). These statements reveal a congressional purpose of expanding Leave Act coverage, rather than precluding certain full-time employees from participation in the leave system. Given the legislative history of the Act, the court holds that the "irregular tour of duty" exception has no application to full-time employees.

The Court of Claims, the predecessor to this court, had occasion to examine the "irregular tour of duty" exception in *John T. Lemily v. United States,* 190 Ct.Cl. 57, 418 F.2d 1337 (1969). In *Lemily,* temporary relief deck officers and engineers sought recovery of annual and sick leave benefits, contending coverage under the Act. The court first inquired into whether the claimants were full-time employees. After determining that the deck officers and engineers were part-time, rather than full-time, employees, the court applied § 6301(2)(B)(ii) of the Leave Act and concluded that the claimants were not entitled to leave because they did not work pursuant to a "regular tour of duty." *Id.* at 72, 418 F.2d at 1345. The Court of Claims' two-step approach in determining Leave

---

**10.** Section 6301(2) of the Act, in relevant part, provides the following definition of employee:

> (2) "employee" means—
>   (A) an employee as defined by section 2105 of this title; and
>   (B) an individual employed by the government of the District of Columbia
> but does not include—
>     *   *   *   *   *   *
>   (ii) a part-time employee who does not have an established regular tour of duty during the administrative work-week.

Defendant does not contest that plaintiff falls within the general definition of "employee" under 5 U.S.C. § 2105. Rather, defendant argues that plaintiff is specifically exempted by § 6301(2)(B)(ii) of the Leave Act.

**11.** In the 1978 Amendments to the Leave Act, Congress explained:

> The Annual and Sick Leave provisions contained in subchapter I of chapter 63 of title 5, United States Code, apply to the vast majority of federal employees. The provisions do not apply to elected officials, such as members of Congress, or to certain specific categories of appointed employees. *Legislative History of P.L. 95–519,* U.S.Code Cong. & Admin.News 1978, pp. 4159, 4160.

**12.** Defendant has not brought to the attention of the court, nor is the court aware of, any other exclusion set forth in the Leave Act applicable to plaintiff.

Act coverage is controlling here and entirely consistent with the legislative purpose behind the "irregular tour of duty" exception. In applying this two-part test, the court must first determine whether plaintiff was either a full or part-time employee. If plaintiff was a full-time employee, then he was entitled to leave benefits. If he was a part-time employee, then he is only entitled to annual and sick leave if he served pursuant to "a regular tour of duty."

## C. The Leave Act's General Requirement of Full–Time Employment

■ After examining the evolution of the Leave Act, the Court of Claims in *Lemily* articulated the following definition of a full-time employee:

> Plaintiffs' contention that a person who works the annual equivalent of a 40–hour week is, by definition, not a "part-time" employee under the [Leave] Act, is without merit.
>
>    *    *    *    *    *    *
>
> The Legislative history of the 1951 Act ... makes it abundantly clear that the government employee for whom the Congress fashioned the generally applicable leave benefits was one who was *required* to regularly put in the standard 40–hour workweek. A "basic workweek" is so defined in Civil Service Regulations. 5 C.F.R. § 25.211 (Rev. as of Jan. 1961). Thus, the annual and sick leave allowances provided in the 1951 Act are stated in terms of days, or fractions thereof, "for each biweekly pay period." The regular 40–hour week is implicit in that arrangement.

*Lemily,* 190 Ct.Cl. at 70–71, 418 F.2d at 1344–45.

Therefore, a full-time employee under the Leave Act is one who is regularly required to put in a standard workweek, not an employee paid only "when actually employed" who happens to work the annual equivalent of a 40–hour workweek.

■ In the instant case, plaintiff, as a court reporter, was generally required to prepare transcripts of judicial proceedings and file copies of these transcripts with the clerk of the court. Plaintiff drew a salary for his services as a court reporter.[13] Plaintiff attests that he continuously received a fixed salary based on a 40–hour workweek. Plaintiff submitted earning statements which reflect payment for 80–hours each bi-weekly pay period.[14] Plaintiff's work schedule was subject to the needs of the court. He was required to be available to report proceedings held by the court, often without advance notice.[15] Plaintiff states that he never received compensation on a per diem basis. His compensation was not commensurate with the number of transcripts recorded, the length of each transcript, or any other method suggesting a "paid-when-actually-employed" arrangement. Despite an uncertain work schedule that invariably required him to work more than 40 hours one week, and less than 40 hours another week, plaintiff earned a full-time salary. Plaintiff was obligated to work, or be available for work, for at least 40 hours each week. Plaintiff did more than work the annual equivalent of a 40 hour workweek; he was guaranteed payment for a 40 hour week and required to put in a standard workweek throughout his 28 years of service. The court, therefore, finds that plaintiff was a full-time employee[16] from his ap-

---

**13.** Plaintiff's salary was established by the Judicial Conference.

**14.** In his supplemental memorandum, plaintiff included earning statements dating from 1982, 1983, 1984, 1985, and 1986. Plaintiff states in his supplemental affidavit that he was always paid for 40 hours a week and that the submitted statements are a representative sample of earnings received during his entire term of appointment.

**15.** Affidavit of Marvin D. Cutright in support of his motion for summary judgment, *supra.*

**16.** Defendant has considered plaintiff a full-time employee for other purposes. The GUIDE TO JUDICIARY POLICIES AND PROCEDURES: COURT REPORTERS MANUAL, published by the Administrative Office, states the following Judicial Conference policy regarding salary:

> All official court reporters who have satisfactorily completed ten years of *full-time* service

pointment as a court reporter in 1958 until his retirement in 1986.[17]

As a full-time court reporter, plaintiff was an "employee" within the definition of 5 U.S.C. § 2105, not subject to any exception set forth in § 6301(2)(B). Plaintiff was thus covered by the Leave Act for his entire term of appointment.

### D. Administrative Error and the Restoration of Leave Balances

■ Defendant alternatively argues that, even if plaintiff was covered by the Leave Act prior to 1984, he has forfeited whatever balances are due him under the Act. Plaintiff contends that defendant's failure to grant him leave in accordance with the Leave Act from 1958 through 1983 was administrative error justifying restoration of leave balances pursuant to 5 U.S.C. § 6304(d)(1).

Under 5 U.S.C. § 6304(a), annual leave which exceeds the accumulation permitted by law (here, 30 days or 240 hours) is forfeited at the beginning of the first full pay period in a year. There is no corresponding forfeiture provision for sick leave.[18] Forfeited annual leave may be restored in limited circumstances set forth in 5 U.S.C. § 6304(d)(1):

> (d)(1) Annual leave which is lost by operation of this section because of—
>
> (a) administrative error when the error causes a loss of annual leave otherwise accruable after June 30, 1960.
>
> (b) exigencies of the public business when the annual leave was scheduled in advance.
>
> \*    \*    \*    \*    \*    \*

shall be restored to the employee.

Administrative error encompasses more than mere clerical mistakes. For example, the Court of Claims found administrative error where a government employee's supervisors "failed to fulfill their obligations under law to see that leave was 'in fact scheduled for use'." *Arthur E. Quillo v. United States*, 229 Ct.Cl. 540 (1981). The Comptroller General determined that the government committed administrative error by improperly denying several Administrative Law Judges court leave under 5 U.S.C. § 6322 (1982), ADMINISTRATIVE LAW JUDGES—COURT LEAVE, 64 Comp.Gen. 200 (1985), and by misstating applicable law to employees, PAUL A. CARR AND GERALD B. SEACH—RESTORATION OF FORFEITED ANNUAL LEAVE, Comp.Gen. Dec. B–222221 (Unpublished Sept. 8, 1986).

Plaintiff was legally entitled to Leave Act coverage prior to 1984. Defendant's exclusion of plaintiff from the leave system was based on an erroneous interpretation of the Leave Act. By depriving plaintiff of Leave Act benefits, defendant failed to fulfill its statutory obligation of providing annual and sick leave benefits to an eligible employee. Defendant, therefore, committed administrative error within the meaning of § 6304(d)(1).

■ Defendant's administrative error does not, however, entitle plaintiff to 28 years of accrued annual leave. Under § 6304(a), plaintiff was entitled to carryover a maximum of 240 hours of annual

---

as a court reporter for a United States District Court shall receive the starting salary established by the Judicial Conference of the United States, plus a five percent longevity increase over that starting salary.
*Guide*, trans. 3, vol. VI, Ch. 5 (7/12/85). Plaintiff received longevity increases pursuant to the aforementioned policy. Defendant, thus, indirectly acknowledges that plaintiff was a full-time employee prior to 1984.

**17.** Given the evidence at hand, this court does not perceive how plaintiff's employment status was transformed by a prearranged "regular tour of duty" in 1984. Plaintiff received compensation for a standard workweek both before and after this date. By virtue of his full-time salary,

plaintiff was, at the very least, required to be available to perform all work specified by the court for a certain number of hours each week. Indeed, defendant's implementation of a "regular tour of duty" policy appears to be no more than a vain attempt to avoid retroactive payment of annual and sick leave benefits to an otherwise entitled employee. However, since plaintiff was a full-time employee throughout his term of appointment, the court need not decide whether he served pursuant to a "regular tour of duty" prior to 1984.

**18.** Section 6307 governs the accrual of sick leave. Section 6307(b) states that sick leave not used by an employee "accumulates for use in succeeding years." ·

leave [19] from one year to the next. Even with the operation of the forfeiture provision, plaintiff could not carryover more annual leave than permitted under § 6304(a). The court, therefore, holds that plaintiff forfeited all annual leave exceeding the maximum carryover set forth in 5 U.S.C. § 6304(a). In addition, the court holds that plaintiff is entitled to restoration of sick leave which accrued from September 1958 to October 1986.[20] *John Burich v. United States*, 177 Ct.Cl. 139, 366 F.2d 984 (1967). The court recognizes that plaintiff was excluded from the leave system prior to 1984, and was, therefore, unable to prevent the forfeiture of annual leave. However, a contrary result would put plaintiff in a better position than other employees covered by the Leave Act and thereby create a windfall for plaintiff not contemplated by the Act.

Finally, defendant states that a determination by this court that plaintiff can recover annual and sick leave would impose a very large financial burden upon the United States, since all court reporters were similarly excluded by defendant from the leave system. The court's decision is not a mandate for recovery of leave benefits by every court reporter employed by defendant prior to 1984. Rather, recovery is predicated upon a showing of an employment relationship within the ambit of the Act. The language in the Leave Act is clear and unequivocal in not exempting full-time employees from sick and leave benefits. If full-time court reporters are to be excluded by the Act, it is a matter for legislative, not judicial consideration. The court, therefore, holds that plaintiff was covered by the Leave Act from September 1958 to October 1986. The court further holds that plaintiff is entitled to annual and sick leave benefits calculated in a manner consistent with this Opinion. Defendant is directed to provide plaintiff with a lump sum payment for annual leave and credit

plaintiff for sick leave due under the Leave Act for purposes of retirement benefit annuity.

### Conclusion

For the reasons stated above and pursuant to RUSCC 42(c), plaintiff's motion for summary judgment is hereby granted and defendant's cross-motion for summary judgment is denied. The parties are directed to file, within 45 days, a joint stipulation as to the amount due plaintiff for accrued and accumulated annual leave benefits and the hours to be credited plaintiff for sick leave, pursuant to the Leave Act, 5 U.S.C. § 6301 (1982).

Accordingly, the Clerk is directed to enter judgment at that time without further order by the court. No costs.

---

**19.** Section 6304(d)(1) enabled plaintiff to restore annual leave which would have accrued, but for administrative error, up to the 240 hour maximum accumulation as provided by law.

**20.** Defendant's failure to keep leave records for plaintiff, prior to 1984, does not prevent plaintiff from recovering his entitled benefits. Plaintiff's affidavits, earning statements, and Standard Form 1150 constitute satisfactory evidence of the amount of accumulated leave due him under the Act. *Sauer v. United States*, 173 Ct.Cl. 642, 354 F.2d 302 (1965).