Marvin D. CUTRIGHT, on behalf of himself and all others similarly situated, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant/Cross–Appellant.

Nos. 91–5031, 91–5044.

United States Court of Appeals, Federal Circuit.

Jan. 14, 1992.

Rehearing Denied March 5, 1992.

Suggestion for Rehearing In Banc Declined March 18, 1992.

Paul Christian Hague, Meyer, Unkovic & Scott, Pittsburg, Pa., argued, for plaintiffs-appellants. With him on the brief was Frank G. Salpietro. Also on the brief was Brian G. Brunsvold, Finnegan, Henderson, Farabow, Garret & Dunner, Washington, D.C., of counsel.

Agnes M. Brown, Atty., Dept. of Justice, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant/cross-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director.

Before ARCHER, LOURIE and RADER, Circuit Judges.

RADER, Circuit Judge.

Mr. Marvin Cutright, a retired court reporter, claims entitlement to, and seeks compensation for, leave he had not used at the time of his retirement. The United States Claims Court awarded Mr. Cutright leave benefits, but limited the award to 240 hours under 5 U.S.C. § 6304(a) (1988). *Cutright v. United States*, 21 Cl.Ct. 490, 496–97 (1990). Mr. Cutright appeals the limit on his award. The United States cross-appeals the Claims Court's determination that Mr. Cutright is entitled to payment for unused leave.

Because Mr. Cutright was a part-time employee without a regular tour of duty, *see*, 5 U.S.C. § 6301(2)(B)(ii) (1988), this court reverses the Claims Court's ruling on payments for unused leave.

## BACKGROUND

Mr. Cutright was a court reporter for the United States District Court for the Western District of Pennsylvania from August 30, 1958 until his retirement on October 6, 1986. At retirement, Mr. Cutright sought payment under the Leave Act, 5 U.S.C. §§ 6301–6326 (1988), for sick and annual leave time which he claimed he had accrued but not used. The Administrative Office of the United States Courts paid Mr. Cutright only for unused leave from 1984 to 1986.

The Administrative Office has responsibility to "[s]upervise all administrative matters relating to the offices of clerks and other clerical and administrative personnel of the courts." 28 U.S.C. § 604(a)(1) (1988). In denying Mr. Cutright's request, the Administrative Office explained that the Leave Act did not cover court reporters before January 1984.

In 1983, the Judicial Conference of the United States first made court reporters eligible to accrue leave. This policy extended to court reporters "who ha[ve] been placed on a regular tour of duty consisting of a set number of work hours per week in the courthouse, specified in advance." *Re-*

*ports of the Proceedings of the Judicial Conference of the United States*, p. 49 (1983). According to the Administrative Office, Mr. Cutright had no "regular tour of duty" until 1984. Therefore, the Administrative Office paid Mr. Cutright only for those periods during which the Leave Act covered court reporters. The Administrative Office denied his request for payments dating back to 1958.

Mr. Cutright filed a claim in the Claims Court for leave benefit payments from 1958 through 1984. Mr. Cutright moved to certify a class action on behalf of "present and former judicial system employees who have been afforded less than full benefits granted under the Leave Act." The Claims Court denied the motion. *Cutright v. United States*, 15 Cl.Ct. 576, 579 (1988). Mr. Cutright appeals this denial.

Mr. Cutright also moved for summary judgment on his entitlement to payments for unused leave. He presented several earnings statements to show he had received a salary based on a 40–hour workweek. *Cutright*, 21 Cl.Ct. at 495 n. 14. The Claims Court granted Mr. Cutright's motion for summary judgment. The Claims Court, however, noted that Mr. Cutright could not accumulate more than 240 hours of leave under 5 U.S.C. § 6304(a). Therefore, the Claims Court limited his recovery to payment for 240 hours. Mr. Cutright appeals this limit on his compensation award. The United States cross-appeals the Claims Court's judgment in Mr. Cutright's favor.

### DISCUSSION

Under summary judgment rules, the moving party must show both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56. Moreover, the trial court must resolve significant doubts about factual issues in favor of the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### Leave Act

The Leave Act permits Government employees to accrue annual and sick leave. 5 U.S.C. §§ 6303, 6307. The Act, however, does not cover every Government employee. Section 6301 of title 5 specifically excludes:

> a part-time employee who does not have an established regular tour of duty during the administrative workweek;

5 U.S.C. § 6301(2)(B)(ii).

In *Lemily v. United States*, 418 F.2d 1337, 190 Ct.Cl. 57 (1969), the United States Court of Claims explained the meaning of the phrase "part-time employee who does not have an established regular tour of duty." In that case, the Court of Claims applied the part-time employee exclusion to relief deck officers and engineers. The *Lemily* plaintiffs were temporary employees paid at an hourly rate on a when-actually-employed basis. *Id.*, 418 F.2d at 1338. Although they apparently worked the equivalent of a 40–hour workweek, the Court of Claims determined that the *Lemily* plaintiffs were part-time employees without a regular tour of duty. *Id.*, 418 F.2d at 1345. Therefore, the *Lemily* plaintiffs received no Leave Act benefits.

In construing the section 6301 exclusion, the Court of Claims stated:

> There is no evidence of a legislative intent to otherwise alter or relax the basic concept of a tour of duty as representing a specific period of time, regularly established in advance, during which an employee is unequivocally required to work.

*Lemily*, 418 F.2d at 1344. Thus, the Court of Claims clarified that the "regular tour of duty" standard requires part-time employees to work at specific times to qualify for Leave Act benefits. Those duty hours must be set in advance. Otherwise the part-time employee does not have a regular tour of duty within the administrative workweek. The *Lemily* plaintiffs' "relationship with their employer was essentially one of mutual convenience wherein duty assignments resulted from a day-to-day and generally informal alignment of available work with [individuals] willing and able to do it." *Id.* Therefore, the section

6301 exclusion operated to deny them Leave Act benefits.

■ From 1958 to 1984, Mr. Cutright was a part-time employee. Mr. Cutright was free to take work from independent sources. Whenever not in court, Mr. Cutright could record depositions for private attorneys or otherwise market his skills. When Mr. Cutright took vacation, the district court required him to hire his own replacement. Although the Government generally supplies equipment for full-time employees, title 28 specifically required court reporters to supply their own recording equipment. 28 U.S.C. § 753(e) (1948).

From 1958 to 1984, Mr. Cutright also lacked a regular tour of duty. The absence of a regular tour of duty is another indication of Mr. Cutright's part-time employee status. The district court did not require Mr. Cutright's services at the courthouse for 40 hours each week. Instead, he came to the court only when his services were required. The district court did not exercise full-time supervision over Mr. Cutright. He could leave the courthouse when not in service. Indeed, the Claims Court noted that Mr. Cutright's "uncertain work schedule ... required him to work more than 40 hours one week, and less than 40 hours another week." *Cutright*, 21 Cl.Ct. at 495. The Claims Court also noted that Mr. Cutright's schedule "was subject to the needs of the court." *Cutright*, 21 Cl.Ct. at 495. Specifically, Mr. Cutright performed his services "often without advance notice." *Id.* These findings disclose that Mr. Cutright's work hours were not regular nor were they set in advance. Mr. Cutright did not have a regular tour of duty. In sum, under the terms of section 6301, Mr. Cutright was a part-time employee without a regular tour of duty from 1958 to 1984.

This conclusion is consistent with a series of Comptroller General decisions spanning nearly four decades.* As early as 1945, the Comptroller General determined that court reporters were part-time employees outside the Leave Act:

> [T]he nature of the duties of court reporters is such as to be inconsistent with the granting of leave of absence with pay. It is concluded, therefore, that court reporters employed under the 1944 statute are not full-time employees, but rather, part-time or intermittent employees, within the meaning of the leave regulation and, as such, are excluded from the benefit of receiving leave of absence with pay under the annual leave statute and regulations thereunder.

25 Comp.Gen. 185, 187–88 (1945). In 1951, the Comptroller General again decided that, without a regular tour of duty set in advance, part-time employees would not earn Leave Act benefits even though working a 40–hour week. 31 Comp.Gen. 215, 217–18 (1951). The next year, the Comptroller General defined a "regular tour of duty" as a "definite and certain time, day and/or hour of any day, during the workweek when the employee regularly will be required to perform duty." 31 Comp.Gen. 581, 584 (1952). In 1974, the Comptroller General again determined that day-to-day variance in court schedules prevented reporters from working a "regular tour of duty." 54 Comp.Gen. 251, 258 (1974).

The Court Reporters Act, 28 U.S.C. § 753 (1988), gave the Judicial Conference supervisory authority over court reporters. Exercising this statutory power, the Judicial Conference in 1983 authorized courts to place reporters on a regular tour of duty:

> Beginning with the 1984 leave year (effective January 8, 1984) a reporter who has been placed on a regular tour of duty consisting of a set number of work hours per week in the courthouse, specified in advance ... is to earn annual leave in accordance with the Leave Act. 5 U.S.C. § 6301 et seq.

*Report of the Proceedings of the Judicial Conference of the United States*, p. 49

---

* This court does not consider Comptroller General decisions binding on the Claims Court. *National Forge Co. v. United States*, 779 F.2d 665, 668 (Fed.Cir.1985) (citing *Burroughs Corp. v. United States*, 617 F.2d 590, 597, 223 Ct.Cl. 53

(1980)). Rather this court refers to these Comptroller General decisions to show the reasons that the 1983 Judicial Conference of the United States undertook to provide reporters a regular tour of duty.

(1983). This action, for the first time, enabled court reporters to earn Leave Act benefits. The Judicial Conference's resolution provided that court reporters on a regular tour of duty "may not perform any private (free lance) work of any kind." *Id.* This action recognized that, and indeed was only necessary because, court reporters before 1984 were part-time employees without a regular tour of duty.

The Claims Court erred when it determined that Mr. Cutright was a full-time employee eligible for Leave Act benefits at the inception of his employment in 1958. *Cutright,* 21 Cl.Ct. at 495–96. In reaching this incorrect conclusion, the trial court gave undue weight to evidence that Mr. Cutright "was guaranteed payment for a 40 hour week." *Id.* at 495. In *Lemily,* the Court of Claims defined a full-time employee in terms which exclude Mr. Cutright:

> In general, the full-time employee ... is one regularly required to put in the standard workweek, not a when-actually-employed employee who happens to work the annual equivalent of a 40–hour week.

*Lemily,* 418 F.2d at 1345. Mr. Cutright was not required to work a standard workweek from 1958 to 1984. Rather Mr. Cutright worked at the convenience of the court. The variance in Mr. Cutright's day-to-day schedule shows that he was a "when-actually-employed" employee who was free to earn compensation as a private entrepreneur when not actually in court service. Mr. Cutright's tour of duty was neither regular nor set in advance.

Like the *Lemily* plaintiffs, Mr. Cutright contends that he worked and received payment for the equivalent of a 40–hour week. In the absence of a regular tour of duty, set in advance, however, the Court of Claims determined that working the equivalent of a 40–hour week did not qualify the *Lemily* plaintiffs for Leave Act benefits. This rule applies as well to Mr. Cutright. The Claims Court erred in concluding that Mr. Cutright was a full-time employee.

The Claims Court also erred in holding that the Government committed administrative error in denying Mr. Cutright Leave Act benefits. *Cutright,* 21 Cl.Ct. at

496. Section 6304(d)(1) of title 5, which permits restoration of leave balances lost due to administrative error, applies only to employees covered by the Leave Act. The Leave Act did not cover Mr. Cutright from 1958 to 1984. Therefore, Mr. Cutright earned no Leave Act benefits. Even if administrative error occurred, section 6304(d)(1) could not restore to Mr. Cutright benefits which he was not eligible to earn in the first place.

In sum, the Claims Court was incorrect in determining as a matter of law that Mr. Cutright qualified for Leave Act benefits from 1958 to 1984. Rather, the record shows that Mr. Cutright was a part-time employee without a regular tour of duty during the administrative workweek. Therefore, the Leave Act did not cover Mr. Cutright. In view of its decision, this court need not consider Mr. Cutright's argument that the Claims Court improperly refused to certify a class action.

## CONCLUSION

Because Mr. Cutright was a part-time employee without a regular tour of duty from 1958 to 1984, this court reverses the Claims Court's award of lump-sum payment for benefits under the Leave Act.

## COSTS

Each party shall bear its own costs.

REVERSED.